Argued and submitted January 26, affirmed September 5, 1990

Lawrence N. SANO
and Glenda A. Sano,
*Appellants,*

*v.*

Richard J. BJELLAND
and Grace Village Associates,
*Respondents.*

(87-C-10516; CA A50952)

796 P2d 1240

Andrew P. Ositis, Salem, argued the cause and filed the brief for appellants.

Michael S. Evans, Portland, argued the cause for respondent Richard J. Bjelland. With him on the brief were Gary I. Grenley and Grenley, Rotenberg, Laskowski, Evans & Bragg, P.C., Portland.

No appearance for respondent Grace Village Associates.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Plaintiffs appeal from a judgment for defendants in this action for securities fraud in which they sought recovery of the amount of their investment and cancellation of their promissory note given to defendants as a part of the purchase price for the securities. Although the remedy of cancellation is an equitable one, the material facts are not disputed; it is the legal effect of those facts that is raised on appeal. Therefore, we review for errors of law. *See Southern Oregon Production Credit Ass'n. v. Patridge,* 71 Or App 53, 691 P2d 135 (1984).

Plaintiffs purchased shares in defendant Grace Village Associates (GVA), a limited partnership, which was organized to own and lease units in Grace Village, a "life care facility." Defendant Bjelland, the promoter and general partner of the limited partnership, arranged for the financing of construction of Grace Village with FirstWest Mortgage. On May 8, 1985, Bjelland learned that FirstWest had approved construction and "standby term" loans and that a letter of commitment would be forthcoming, detailing the terms and conditions of the loan. On that date, Bjelland first met with plaintiffs for the purpose of encouraging them to invest in the partnership. He provided them with a private placement memorandum giving the details of the partnership investment. The memorandum stated:

> "A commitment for a construction loan of $6,000,000 has been obtained from FirstWest Mortgage Corporation."

FirstWest sent its commitment letter to defendants on May 17, 1985. The commitment was subject to several conditions: GVA's pre-sale of at least 47 units by July 31, 1985, the closing date of the construction loan; GVA's submission to the bank of a $475,000 letter of credit to be held by the bank until January 15, 1986, the date by which the contribution requirement from the limited partners was to be satisfied; and FirstWest's securing the participation (the amount of which was not stated) of another lender. Defendants never showed the commitment letter to plaintiffs, and plaintiffs never sought additional information concerning the financing of Grace Village. They were unaware of the conditions to which the commitment was subject.

The May 17 commitment was to expire on August 5,

1985. FirstWest had difficulty securing the participation of an additional lender. When it became apparent that it would not be able to do so by August 5, 1985, FirstWest agreed verbally on August 3, and in writing on August 9, 1985, to extend the commitment until October 5, 1985.

On August 3, 1985, plaintiffs purchased three limited partnership units for an investment of $54,150, with a downpayment of $9,900 in cash, the balance payable pursuant to the terms of a promissory note. They later made two payments of $15,000 and $600.

By August 9, 1985, all of the limited partnership investment units had been sold and, on that date, FirstWest agreed to allow junior financing by the City of Woodburn in an amount not to exceed $245,000. On August 26, 1985, that loan closed. It was not, however, sufficient to meet FirstWest's requirement for a participating lender.

By December, 1985, GVA had satisfied the condition regarding pre-sale of the residential units. The grand opening for the model residence took place on February 20, 1986. On March 11, 1986, FirstWest still had not obtained a participating lender and, therefore, extended its loan commitment to June 1, 1986. In April, GVA advised FirstWest that it would have to halt construction because of a lack of funds. In June, the loan commitment expired, and GVA learned that First-West would not renew the commitment. Defendants requested and received from FirstWest the nonrefundable $15,000 loan commitment fee. Defendants refused, however, to return plaintiffs' investment.

Before trial, plaintiffs moved to amend their pleading "to conform to the evidence." The court denied the motion on the ground that it was "untimely," because no evidence had been taken. Plaintiffs offered evidence relating to fraudulent omissions. The court refused to allow evidence of fraudulent omissions, on the ground that the complaint did not state a claim for fraudulent omissions. After trial, the court held that plaintiffs had failed to prove the allegation that defendants had falsely represented that "a construction loan * * * had been obtained." It awarded judgment to defendants.

The trial court found:

> "The Grace Village project prospectus * * * states that a construction loan commitment has been received and gives the amount of the loan and the terms. This was absolutely a truthful statement at the time of the purchase of the securities by the plaintiffs."

Plaintiffs assign error to that finding but do not contend that the document that the trial court found to be in existence at the time of their purchase was not in existence or that it did not say what the court found that it represented. Rather, they contend that, in view of the conditions placed on the commitment, at least one of which had not been met on the date that plaintiffs purchased their investment, the document was not actually a commitment, but "constituted only a statement of proposed contract terms for a future loan agreement with significant conditions precedent." In other words, they appear to contend that, because the bank had not made a firm and unconditional commitment to lend, it had not made a commitment. Therefore, they argue, the court erred, as a matter of law, in concluding that a commitment was in existence at the time when they purchased their investment.

Plaintiffs appear to make no distinction between a commitment and an actual loan. Clearly, the document was a loan commitment, although subject to conditions. Not only is there no requirement that a commitment be unconditional, plaintiffs' attorney conceded that all loan commitments relating to projects the size of Grace Village contain conditions, and that plaintiffs, who were sophisticated investors, knew that. The commitment letter of May 17, 1985, was enforceable according to its terms. The trial court's conclusion that defendants had a construction loan commitment was correct.

Plaintiffs contend that the trial court should have considered evidence that defendants failed to inform them that the commitment was subject to significant conditions and that, at the time defendants offered the investment to plaintiffs, some of those conditions had not been satisfied. They argue that the trial court erred in holding that their complaint was insufficient to raise those issues and rejecting evidence about them.

It is true that silence can be a form of misrepresentation. ORS 59.115(1)(b) provides that a person is liable under ORS 59.115(2) if the person

"sells a security by means of an untrue statement of a material fact *or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading* * * *." (Emphasis supplied.)

Plaintiffs contend that the complaint, read liberally, sufficiently pleads a misrepresentation by omission so that the evidence concerning the alleged omissions relating to the commitment may be considered. The third paragraph of the complaint alleged:

"The defendants offered and sold said securities to the plaintiffs by means of untrue statements of material facts or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. Specifically, defendants falsely represented to the plaintiffs that: 'A construction loan of $6,000,000 has been obtained from FirstWest Mortgage Corporation.' In truth and in fact no such construction loan had been obtained. Said fact was material and plaintiffs did not know of the untruth or omission."

Plaintiffs explain that allegation in their brief:

"The third paragraph * * * utilizes the statutory language of ORS 59.135(2) [regarding criminal liability for securities violations], referring to (1) untrue statements of material facts and (2) an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. What followed in the complaint was the allegation of the untruth. This does not, however, suddenly made [*sic*] the complained of omissions disappear. Restated, the complaint refers to untrue statements of material facts (plural), one specific misrepresentation, and omissions connected to the (untrue) statement made."

The explanation expands the allegation substantially. Plaintiffs are entitled to claim that defendants sold them securities by means of an omission to state a material fact necessary to make the statement that they did make not misleading. Here, the *alleged* untrue statement is that a *loan* had been obtained. There is no evidence that defendants represented that a loan had been obtained. The only evidence is that defendants represented that a *loan commitment* had been obtained. Although it may be that, because of the failure of defendant to disclose certain conditions of the commitment, plaintiffs may have

understood the loan commitment to be a *loan,* that is not what they alleged or argued. There is no evidence that the statement that they alleged in the complaint was untrue was ever made. There was no reason for the trial court to admit evidence of omissions that were necessary to make a statement · that was not made not misleading. The trial court did not err.[1]

■      Plaintiffs contend that the trial court erred in denying their motion to amend the complaint before trial to conform to the evidence. As the trial court pointed out, at that time no evidence had been taken. ORCP 23B. The motion to amend was not renewed during or after trial. Plaintiffs do not tell us what the proposed amendments were or how they would help them state a claim or make the complaint conform to the evidence. There is no indication that the court abused its discretion in failing to allow the motion.

Affirmed.

---

[1] In view of our holding on this issue, we need not address plaintiffs' third assignment of error concerning the trial court's alternative determination that defendants had no duty to disclose the conditions of the commitment.